| | |
|---|---|
| KENNETH BLUE, <br><br> Plaintiff, <br> v. <br><br> CITY OF HARTFORD, <br><br> Defendant. | Civil Action No. <br> 3:18-cv-974 (CSH) <br><br><br> **FEBRUARY 19, 2020** |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

Plaintiff Kenneth Blue instituted this action against the City of Hartford, Kelly Kirkley-Bey ("Kirkley-Bey"), Councilwoman rJo Winch ("Councilwoman Winch"), and Council President Thomas J. Clarke II ("Council President Clarke"). *See* Doc. 1 ("Compl."). Plaintiff alleged that the Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), harassed and retaliated against him, and intentionally and negligently inflicted emotional distress upon him. *Id*. ¶¶ 157–162, 163–171, 178–183, 184–188. He also asserted a negligence claim against only the City of Hartford. *Id.* ¶¶ 172–177.

This Court issued a Ruling (the "Omnibus Ruling") on motions to dismiss by Defendants the City of Hartford, Kirkley-Bey, Councilwoman Winch, and Council President Clarke. *See Blue v. City of Hartford*, No. 18 Civ. 974, 2019 WL 612217 (D. Conn. Feb. 13, 2019). The Omnibus Ruling resulted in the dismissal with prejudice of Plaintiff's federal claims as to all Defendants and dismissal without prejudice to filing in a state court of competent jurisdiction of Plaintiff's state law claims. *See id.* at *9.

1

Plaintiff filed a motion for reconsideration. *See* Doc. 39. He argued that it would be manifest injustice to dismiss his federal claims without granting him leave to replead. The Court issued a Ruling, in which it concluded that it adhered to its prior holdings that Plaintiff did not meet Title VII pleading standards; but that an arguable possibility arose that Plaintiff's federal claims against the City of Hartford may not be futile, a circumstance that would allow Plaintiff to file an amended complaint against that Defendant. *See Blue v. City of Hartford*, 18 Civ. 974 (CSH), 2019 WL 1559430, at *5 (D. Conn. Apr. 10, 2019).

Plaintiff thereafter filed an amended complaint against the City of Hartford ("Defendant"). *See* Doc. 42 ("First Amended Complaint" or "FAC"). Plaintiff alleged that Defendant was vicariously liable for its employees' actions, including their conduct that created for Plaintiff a hostile work environment on the basis of race and sex; and for their acts of retaliation against Plaintiff. FAC ¶¶ 67–68. Defendant moved to dismiss Plaintiff's claims. Doc. 48. The Court then issued a Ruling, in which it dismissed Plaintiff's race-based hostile work environment and retaliation claims, but denied Defendant's motion with respect to Plaintiff's sex-based hostile work environment claim. *See Blue v. City of Hartford*, No. 18 Civ. 974 (CSH), 2019 WL 7882565, at *17 (D. Conn. Oct. 22, 2019). Thereafter, on November 11, 2019, Defendant's counsel took Plaintiff's deposition. Doc. 56-3, at 25–38; Doc. 58-1.

Defendant now moves for summary judgment on Plaintiff's remaining claim that he experienced a hostile work environment on the basis of sex. Doc. 56. Plaintiff opposed Defendant's motion. Doc. 57 ("Pl.'s Mem."). This Ruling resolves the motion.

## I. BACKGROUND

The following facts are derived from the Parties' submissions pursuant to Local Rule 56(a) and the affidavits and exhibits attached thereto. *See* Doc. 56-2 ("Def.'s 56(a)"); Doc. 57-1 ("Pl.'s 56(a)").

Defendant is a Connecticut municipal corporation and Plaintiff's employer. Def.'s 56(a) ¶ 1. Defendant hired Plaintiff in 2000 as a seasonal employee in its Department of Public Works. *Id.* ¶ 4. That same year, he became a permanent employee after obtaining a gardener position. *Id.* Beginning in 2006, Plaintiff began serving as a Maintenance Mechanic; and in 2011, he became a Team Leader. *Id.*

On or about January 12, 2017, Plaintiff was in the rear parking lot at City Hall when he heard a revving engine and sensed a vehicle moving quickly towards him (the "parking lot incident"). *Id.* ¶ 6. Plaintiff observed that the driver of the vehicle was Kirkley-Bey, who was employed by the City as an executive assistant in the Court of Common Council to Councilwoman Winch. *Id.* ¶¶ 2, 6. Plaintiff complained about the incident to Officer Jim Barrett ("Officer Barrett"), a Hartford police officer assigned to City Hall. *Id.* ¶ 7. Shortly thereafter, Plaintiff, Officer Barrett, and Councilwoman Winch were in the maintenance office discussing the incident, when Kirkley-Bey entered, yelling that Plaintiff was a "clown ass nigger." *Id.* ¶ 8. Officer Barrett then escorted Kirkley-Bey—who, according to Officer Barret, remained "heated"—out of the maintenance office to his office on the ground floor, when Plaintiff came out into the hall yelling that Kirkley-Bey was a "crackhead." *Id.* ¶ 9.[1]

---

[1] Plaintiff in his First Amended Complaint originally included the factual allegations concerning the parking lot incident and subsequent altercation in support of his race-based hostile work environment claim, which the Court dismissed. *See Blue*, 2019 WL 7882565, at *9. The Court references these details herein, however, because they provide context to the later incidents that give rise to Plaintiff's remaining sex-based hostile work environment claim.

3

The crux of Plaintiff's sex-based hostile work environment claim stems from the evening of February 3, 2017, when Plaintiff was assigned to work at an event held in the City Hall atrium called "Honoring Our Own." *Id.* ¶ 11. Plaintiff and another maintenance employee were expected to set up tables and chairs prior to the event, monitor trash and other custodial issues during the event, and clean up after the event. *Id.*

Also present at the event was Kirkley-Bey. *Id.* ¶ 11. During the event, Kirkley-Bey reported a problem with the locking mechanism on the Council Chamber door to Security Officer Oscar Johnson ("Officer Johnson"), who relayed the message to Plaintiff. *Id.* ¶ 12. All three proceeded to inspect the lock. *Id.* After doing so, as Plaintiff was leaving the Council Chambers, Kirkley-Bey grabbed his arm and pulled him back to speak with her. *Id.* ¶ 13; Pl.'s 56(a) ¶ 43. This interaction was observed by Officer Johnson. *Id.* According to Plaintiff, Kirkley-Bey sought to speak with him about the parking lot incident from the previous month and subsequent altercation between them, telling him to "blame" Councilwoman Winch for what had transpired. Def.'s 56(a) ¶ 13.

On a second occasion that evening, Kirkley-Bey grabbed Plaintiff again when he was talking to other maintenance employees. *Id.* This incident was also observed by Officer Johnson. Pl.'s 56(a) ¶ 46.

Still later that night, Plaintiff returned to the maintenance office on the ground floor of City Hall when Kirkley-Bey entered the office trying to talk to him again about the parking lot incident. Def.'s 56(a) ¶ 14. According to Plaintiff, he asked Kirkley-Bey to leave because he did not feel comfortable alone with her in the office. Pl.'s 56(a) ¶ 49. Instead of leaving, Kirkley-Bey began asking Plaintiff what she could do and offered to take him out to dinner. *Id.* While speaking to Plaintiff, Kirkley-Bey grabbed the Plaintiff's hand and tried to place it on her breast first, then on

4

her genitals. *Id.* ¶ 50. As Plaintiff attempted to push Kirkley-Bey away, she tried to pull him in and kiss him on the lips. *Id.* ¶ 51. Plaintiff turned his head and the kiss landed on his cheek. *Id.*

Meanwhile, Officer Johnson walked down the stairs into the maintenance office and observed Kirkley-Bey attempting to kiss Plaintiff. *Id.* ¶ 52. Officer Johnson could see that the Plaintiff had his hands up and he was stepping back; and he also observed Kirkley-Bey's attempt to place Plaintiff's hands on her. *Id.*

Officer Johnson then told Plaintiff that there was a problem in another room that required his attention and they all exited the maintenance office. *Id.* ¶ 53. As Officer Johnson and Plaintiff were ascending the stairs, Kirkley-Bey grabbed Plaintiff's buttocks several times. *Id.* ¶ 54. Officer Johnson observed that the Plaintiff appeared shocked by this. *Id.* Plaintiff then called his wife, told her what had happened, and left work early. *Id.* ¶ 56.

## II. STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.*

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the initial burden is satisfied, the burden then shifts to the nonmoving party to present "specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (internal quotation marks and citation omitted). While the Court must view

5

the record in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *see Anderson*, 477 U.S. at 255, the nonmoving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must support any assertion disputing the veracity of a fact or existence of an alleged dispute with specific citation to the evidentiary record. *See* Fed. R. Civ. P. 56(c)(1).

### III. DISCUSSION

According to Plaintiff, Defendant "created and acquiesced to a hostile work environment based on Plaintiff's . . . sex and gender that was so severe and pervasive that it altered the terms and conditions of [Plaintiff's] employment" in violation of Title VII. FAC ¶ 67. Defendant moves for summary judgment on Plaintiff's sex-based hostile work environment.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(2). The law also "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Hostile work environment claims therefore fall within the ambit of Title VII violations. *See id.* at 66.

As the Court previously recounted in its Ruling on Defendant's motion to dismiss, in order to establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is *sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir.

6

2010) (emphasis added; citation and internal quotation marks omitted). A plaintiff must show: (i) that he or she "subjectively perceived the environment to be abusive"; (ii) that "the environment was objectively hostile and abusive"; and (iii) "the extent to which the conduct occurred because of the plaintiff's" membership in a protected class. *Id.*

When analyzing a hostile work environment claim, courts are instructed to examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

As the Court also noted in its prior Ruling, the Second Circuit has held that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995); *Richardson*, 180 F.3d at 437 (same). *Tomka* involved particularly egregious circumstances: the plaintiff alleged that three coworkers raped her after they attended a work dinner together; and that her employer subsequently terminated her because she complained of these rapes and threatened to pursue criminal charges. *See id.* at 1300, 1302.

Nonetheless, this Court has since applied the lessons learned from *Tomka* to arguably-less flagrant (though still improper) workplace conduct. In *Ayers v. State of Connecticut Judicial Branch*, No. 99 Civ. 935 (AHN), 2002 WL 32094365 (D. Conn. Mar. 28, 2002), for example, this Court denied an employer's motion for summary judgment because the Court could not "conclude as a matter of law that [a coworker's] conduct was not so severe and pervasive as to alter the terms and conditions of [the plaintiff's] employment for the worse." *Id.* at *3. In that case, the plaintiff, who worked as a court reporter for the State of Connecticut's Judicial Branch, submitted evidence

7

showing that a coworker "hovered around her work space, made repeated comments concerning her hair, her legs and her weight, gave her gifts and asked her out on dates, and then . . . physically assaulted her by striking her on her buttocks with his hand." *Id.* at *2. In concluding that summary judgment was unwarranted, the Court notably stated that "the one incident of assault alone"—that is, the coworker's striking the plaintiff on her buttocks—"could be sufficient to support a finding of a hostile work environment." *Id.* at *3; *see also Salen v. Blackburn Bldg. Servs., LLC*, No. 14 Civ. 1361 (VAB), 2017 WL 71708, at *9 (D. Conn. Jan. 6, 2017) (denying an employer's motion for summary judgment and noting that, "[e]specially given the significance that the [Second Circuit has] placed on the unwanted touching of an intimate body part, the Court must conclude that [the plaintiff's] allegations [that his employer's human resources manager touched his penis, combined with his coworkers' suggestive comments] rise to the level of actionable sexual harassment." (citation omitted)).

More recently, the Second Circuit came to a similar conclusion, albeit in a case that involved allegations of more than one incident of harassment. In *Redd v. New York Div. of Parole*, 678 F.3d 166 (2d Cir. 2012), the Second Circuit concluded that summary judgment was inappropriate where the plaintiff claimed that a supervisor sexually harassed her on three occasions. During one instance of inappropriate behavior, the plaintiff was reviewing paperwork in the supervisor's office when the supervisor brushed up against the plaintiff's breasts. *See id.* at 169. On a second occasion, while the plaintiff was speaking with a co-worker in the hallway, the supervisor came up to the plaintiff, "touched [her] breasts[,] and rubbed up against it again." *Id.* The supervisor engaged in similar conduct a third time. *See id.* at 169–70. On the basis of these facts, the Second Circuit concluded that summary judgment was inappropriate and that a rational juror could find that the supervisor had sexually harassed the plaintiff because of her sex and that

the abuse was sufficiently severe to create a hostile work environment in violation of Title VII. *See id.* at 178. The court emphasized that the "repeated touching of intimate parts of an unconsenting employee's body is by its nature severely intrusive." *Id.* at 179.

With this preliminary guidance in mind, the Court now turns to Defendant's two overarching arguments in support of its motion for summary judgment: (1) that Kirkley-Bey's conduct was not sufficiently severe to implicate Title VII, *see* Doc. 56-1, at 7 ("Def.'s Mem."); and (2) that Plaintiff has failed to establish that Kirkley-Bey's conduct was directed at Plaintiff because of his gender, as required by Title VII, *see id.* at 3.

Turning to Defendant's first argument—that Kirkley-Bey's conduct was not "sufficiently severe to trigger protection under Title VII"—the Court is unable to reach this conclusion. Def.'s Mem. at 7. Rather, the conduct that Plaintiff alleges in the case at bar is consistent with prior hostile work environment case law; and the Court cannot conclude as a matter of law that Plaintiff has not made out a claim of a hostile work environment. The first factor articulated in *Harris*— frequency of harassment—weighs in Defendant's favor because the sexual harassment allegations consist of only a few isolated incidents on one evening in February 2017.[2] The other factors, however, as the Court will explain below, weigh in Plaintiff's favor.

---

[2] Although the frequency factor weighs in Defendant's favor, the Court notes that it appears that Defendant has misconstrued the Court's prior Ruling on this point. According to Defendant, "[a]s noted by the Court in its ruling on the City's Motion to Dismiss . . . the first element concerning frequency of the objectionable conduct *is not implicated* in this case." Def.'s Mem. at 7 (emphasis added). In the prior Ruling, the Court explained that the first *Harris* factor "*weigh[ed] in Defendant's favor*" because Plaintiff's "allegations of sexual harassment consist of only a few isolated incidents on one evening." *Blue*, 2019 WL 7882565, at *10 (emphasis added). The Court did not go as far as to say that the frequency prong of *Harris* was not implicated altogether, as Defendant contends. Def.'s Mem. at 7–8. To the contrary, the Court even cited to *Tomka*, 66 F.3d at 1305, as it does in this Ruling, in which the Second Circuit explained that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." *Id.* at 18–19.

9

The second *Harris* factor, for example—severity of harassment—points toward a Title VII claim. As the Court previously explained, the severity of harassment prong weighs in Plaintiff's favor because "[p]hysical abuse, such as unconsented touching and striking—particularly on sensitive areas of the body such as buttocks or breasts—are more severe than other forms, such as 'vulgar banter.'" *Flowers v. N. Middlesex YMCA*, No. 15 Civ. 705 (MPS), 2016 WL 1048751, at *4 (D. Conn. Mar. 11, 2016) (citing *Redd*, 678 F.3d at 177). Indeed, in vacating a district court's decision to grant an employer's motion for summary judgment, the Second Circuit articulated the (admittedly "indistinct") "line between complaints that are easily susceptible to dismissal as a matter of law and those that are not." *Redd*, 678 F.3d at 177. According to the Second Circuit:

> On one side lie [complaints of] sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures. . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* (citation and internal quotation marks omitted).

In the case at bar, after touching Plaintiff on two occasions earlier in the night, Kirkley-Bey, "grabbed Plaintiff's hand and placed it on her breast and in her genital area." Pl.'s Mem. at 8. She then "attempted to kiss the Plaintiff on the lips" and then "grabbed his buttocks several times as he was heading up a set of stairs." *Id.* These actions fall on the more severe side of the line discussed above. The Court therefore cannot conclude as a matter of law that Kirkley-Bey's actions do not rise to the level of a Title VII sexual harassment claim.

Defendant seeks to distinguish this case from prior case law, arguing that Kirkley-Bey's behavior in the maintenance office did not give rise to a sexual harassment claim because "Kirkley-Bey took [Plaintiff's] hand to touch *her* sensitive body parts, not *his*." Def.'s Mem. at 8 (emphasis added). According to Defendant, this fact—*i.e.*, that the incident involved the touching of Kirkley-

Bey's own intimate body parts, not Plaintiff's—is "critical" because "cases in the Second Circuit finding that physical touch establishes sufficiently serious conduct even in the absence of frequency involve a victim's intimate body parts." *Id.*

Defendant provides no support for this distinction, however. Nor has the Court's own search revealed any supportive caselaw.[3] To the contrary, the Court has found cases involving analogous circumstances—where a harasser forced a victim to touch the harasser's own body parts—and the courts in those cases have declined to meaningfully distinguish the behavior. In *Bayard v. Riccitelli*, 952 F. Supp. 977, 981 (E.D.N.Y. 1997), for example, the court denied an employer's motion for summary judgment on a Title VII sexual harassment claim. In that case, a clerical employee at a warehouse and storage company claimed that her supervisor verbally and physically harassed her in the workplace. *See id.* at 984. Notable to the case at bar, the employee claimed in her deposition that on at least one occasion the supervisor "grabbed her hand to try to make her touch his penis." *Id.* The Court did not distinguish this behavior from other forms of sexual harassment and concluded that a genuine issue of fact existed as to how pervasive the supervisor's harassment of plaintiffs was. *Id*; *see also George-Sexton v. Lewis*, No. 06 Civ. 6120 (HFS), 2009 WL 804070, at *4–5 (W.D. Mo. Mar. 25, 2009) (denying a motion for summary judgment on a Title VII claim where the plaintiff had claimed, among other deplorable misconduct, that the defendant had "asked her to sit near him on a couch to review some numbers, and then grabbed her hand and put it on his penis"); *Romero v. Dep't of Corr., Cent. New Mexico Corr.*

---

[3] Defendant's argument that, "cases in the Second Circuit finding that physical touch establishes sufficiently serious conduct . . . involve a victim's intimate body parts"—and Defendant's citation to case law to support this argument—is a logical fallacy, that is, an appeal to ignorance. Def.'s Mem. at 8–9. Just because the lion's share of caselaw addresses factual circumstances where a harasser inappropriately touches a victim's body does not preclude the possibility that a Title VII claim could be premised on the harasser's act of forcing a victim to touch the harasser's own body.

*Facility*, No. 02 Civ. 499 (MCA) (WDS), 2003 WL 27385000, at *1 (D.N.M. Aug. 11, 2003) (concluding that genuine issues of material fact existed as to whether an employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior where the plaintiff had alleged that a co-worker had "grabbed her hand and forced her to touch his penis, and inappropriately touched [p]laintiff in a sexual manner").[4]

Defendant next argues that the Court should disregard Kirkley-Bey's conduct toward Plaintiff that preceded the incident in the maintenance office because the earlier conduct was arguably less severe. According to Defendant, "two of the four cited occurrences of unwanted contact involved Ms. Kirkley-Bey touching Plaintiff's arm to compel him to talk to her"; and that these "two interactions cannot reasonably or objectively be construed to constitute a sexual or offensive touch, even though they may have been unwelcome and considered subjectively hostile." Def.'s Mem. at 8.

Although the Court agrees that Kirkley-Bey's earlier conduct was less severe, the Court cannot altogether ignore it in a Title VII analysis. In analyzing a hostile work environment claim, the Court must "look to the record as a whole and assess the totality of the circumstances." *Gorzynski*, 596 F.3d at 102. Indeed, the Second Circuit has instructed that, "especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, the court should not view the record in piecemeal fashion." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010) (citation and internal quotation marks omitted). Although in isolation Kirkley-

---

[4] To be sure, the plaintiffs in *Bayard*, and the other cases that the Court cited, for that matter, also alleged that the supervisor touched their own body parts, as well—not only that the supervisor forced one of the plaintiffs to touch his own genitals. *See, e.g.*, *Bayard*, 952 F. Supp. at 981 (noting that the supervisor allegedly "pinched and grabbed [the plaintiff] in various parts"). But that distinction is not necessarily material, because in the instant case the record reveals that Kirkley-Bey touched Plaintiff's own body (his cheek and buttocks), as well.

Bey's conduct touching Plaintiff's arm could seem innocuous to some, when combined with her other conduct it could give rise to a Title VII claim.

The Court now turns to the third factor of the *Harris* analysis, *i.e.*, whether the harassment was physically threatening or humiliating. The Parties principally disagree about whether Officer Johnson's presence and witness to Kirkley-Bey's conduct in the maintenance room mitigated or exacerbated the conduct. According to Defendant, although Kirkley-Bey "did slap the Plaintiff on his buttocks, this conduct occurred in front of the security officer, tending to undercut a legitimate claim that Plaintiff feared additional physical or sexual contact." Def.'s Mem. at 9. Plaintiff contends, on the other hand, that the fact that Kirkley-Bey's conduct "occurred in front of another co-worker *supports* Plaintiff's claim that he was humiliated." Pl.'s Mem. at 12 (emphasis added).

Neither of the Parties provide caselaw in support of their theories. The Court, nonetheless, agrees with Plaintiff that the presence of a co-worker can increase the victim's sense of humiliation, rather than lessen it. The Second Circuit made a similar observation in *Redd*. In that case, on one of the three occasions that a supervisor came up to the plaintiff and "touched [her] breasts and rubbed up against it again," the interaction took place "in front of" a co-worker. *Redd*, 678 F.3d at 169. In analyzing whether this conduct was humiliating for purposes of denying the employer's motion for summary judgment on the plaintiff's sexual harassment claim, the Second Circuit noted that "given [the plaintiff's] testimony that [the harassing supervisor] came up to her and rubbed up against her breasts 'in front of [another] parole officer,' we believe that a jury could permissibly find that [the supervisor's] conduct was humiliating." *Id.* at 179.

Likewise, as Plaintiffs point out, Defendant cites to another case, *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506 (S.D.N.Y. 2000), where a court denied an employer's motion for summary judgment based on sexual harassment that was observed by the victim's co-worker.

13

In *Wahlstrom*, a Metro-North male engineer approached a female assistant conductor from behind, "grabbed her in a 'bear hug,' made a grunting sound, and slapped her left buttock three times" *Id.* at 511. A junior assistant conductor "who had been sitting across from [the engineer], observed the entire confrontation." *Id.* The plaintiff alleged that she experienced a hostile work environment under Title VII; and, the court denied the employer's motion for summary judgment. In doing so, although the court did not overtly analyze whether the co-worker's presence contributed to her Title VII claim, the Court concluded that "based on the severity of the alleged incident, plaintiff has met her objective burden of demonstrating an atmosphere of sexual hostility." *Id.* at 521. Based on these cases, the Court cannot say as a matter of law that Plaintiff did not experience humiliation in connection with Kirkley-Bey's behavior.[5]

With respect to the fourth factor, whether the harassment unreasonably interfered with Plaintiff's ability to perform his position as a maintenance worker, the Parties do not explicitly discuss this factor, either. As the Court explained in its prior Ruling, Plaintiff's submissions imply that Kirkley-Bey's conduct interfered with his work. *See Blue*, 2019 WL 7882565, at *11. The record reveals, for example, that all of the sexual harassment related-incidents—when Kirkley-

---

[5] Similarly, the Court cannot conclude as a matter of law that Plaintiff did not feel physically threatened. Although the Parties did not brief this issue, there is evidence in the record that Plaintiff felt threatened. Throughout the evening of the February 2017 "Honoring Our Own" event, for example, Officer Johnson observed that every time Plaintiff would move to a different floor of the building, Kirkley-Bey would follow Plaintiff and he would have to walk away. Pl.'s 56(a) ¶ 47. This is further supported by Plaintiff's deposition testimony in which he stated that he was "hiding. . . . just trying to avoid" Kirkley-Bey on the night in question. Doc. 56-3, at 30. Additionally, in the maintenance office later that night, Officer Johnson observed that Plaintiff had his hands up and he was stepping back when Kirkley-Bey tried to kiss him; and that he perceived this conduct as "unwanted" based on Plaintiff's posture. Pl.'s 56(a) ¶ 52. This evidence is comparable to the evidence in *Redd*, where the plaintiff "backed away from [the harassing supervisor] to refuse her advances," and that the plaintiff "tried to avoid [the supervisor]." *Redd*, 678 F.3d at 179. That evidence contributed to the Second Circuit's conclusion in that case that "a jury could . . . find that the atmosphere [the supervisor] created was physically threatening." *Id.*

Bey grabbed him by the arm after he was inspecting a door, when she placed her hands on him while he was speaking with other maintenance workers, and when she sexually assaulted him in the maintenance office—all occurred while Plaintiff was on the job, carrying out maintenance work. *See supra* Part I. Plaintiff in his FAC did not directly allege that the harassment interfered with his work, *see Blue*, 2019 WL 7882565, at *11, nor did he address this issue in the excerpt of his deposition that is in the record, *see* Doc. 58-1. However, viewing the record in the light most favorable to Plaintiff, and resolving all ambiguities and reasonable inferences in his favor (as he is the nonmoving party), this factor too weighs slightly in his favor. *See Harris*, 510 U.S. at 23.

Defendant additionally argues that Plaintiff has not suffered any impact to his terms and conditions of employment as a result of Kirkley-Bey's conduct on February 3, 2017. Def.'s Mem. at 9. According to Defendant, "Plaintiff has acknowledged that he and Ms. Kirkley-Bey have not interacted at all since February 3, 2017." *Id.* Defendant also points out that Kirkley-Bey's "office is on the second floor of City Hall, and the maintenance office is on the ground level, so the likelihood of them coming into contact again is speculative at best." *Id.*[6]

The Court is not persuaded by this argument because it appears that Defendant fundamentally misinterprets the nature of the law governing claims of a hostile work environment. According to Defendant, "Plaintiff has not suffered any impact to his terms and conditions of employment as the result of [his] interaction [with Kirkley-Bey] on February 3, 2017." Def.'s Mem. at 9. This statement, however, implies that Plaintiff must have experienced some impact *apart from* his interactions with Kirkley-Bey in order to assert a valid Title VII claim; that the

---

[6] Plaintiff disputes the fact that he has not suffered any impact to his terms and conditions of employment. Pl.'s 56(a) ¶ 5. According to Plaintiff, he was informed that he could no longer work the "Honoring Our Own" event; his office was moved from City Hall to the Public Safety Building; and he was told that he could no longer work overtime at City Hall. *Id.*

15

February 2017 incident, alone, was not sufficient. This may be the case when a plaintiff brings a Title VII claim based on a tangible employment action. But Plaintiff's understanding of the law misses the mark in connection with a claim for a hostile work environment. As the Second Circuit has stated:

> The phrase "terms, conditions, or privileges of employment" is broad enough to encompass, and render actionable, an employer's requirement that an employee "work in a discriminatorily hostile or abusive environment," so long as the discriminatory conduct at issue is "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris*, 510 U.S. at 21. And this is so notwithstanding the fact that the employer takes no "tangible employment action . . . [that] itself constitutes a change in the terms and conditions of employment" by formally altering a worker's employment status. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998).

*Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001); *see also Meritor*, 477 U.S. at 66 (noting that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult" and that the phrase "terms, conditions or privileges of employment" also bars "a hostile environment based on discriminatory sexual harassment" (citations and internal quotation marks omitted)).

In other words, if Plaintiff has successfully demonstrated a claim of a hostile work environment on the basis of the February 2017 incident (and the Court cannot conclude, for purposes of summary judgment, that he has failed to do so), then contrary to Defendant's assertion, Plaintiff has demonstrated that he has experienced an impact to his terms and conditions of employment. Therefore, Defendant's argument is not persuasive and the Court's analysis is unaffected by this argument.

The Court now turns to Defendant's second overarching argument in support of its motion for summary judgment, that Plaintiff cannot establish that the February 2017 incident occurred

*because of* Plaintiff's sex. Def.'s Mem. at 6 (emphasis added). The Court disagrees. Kirkley-Bey's conduct in the case at bar consisted of overtly sexual action. A rational juror could easily find an inference of discrimination given the blatantly sexual nature of Kirkley-Bey's conduct toward Plaintiff. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex.").

That is especially the case, as Plaintiff points out, given the fact that Kirkley-Bey's conduct involved the touching of intimate body parts—that is, her own breasts and Plaintiff's rear. *See, e.g.*, *Redd*, 678 F.3d at 181 ("It is no more permissible to rule as a matter of law that the supervisor's harassment was not because of the employee's sex when the supervisor repeatedly— albeit silently—touched, rubbed up against, and felt those gender-specific, intimate parts of the employee's body."); *Salen*, 2017 WL 71708, at *10 (denying a motion for summary judgment and ruling that a jury could reasonably conclude that a human resources manager touched an employee because of the employee's gender: "when a harassment alleged involves touching an intimate body part, a jury [can] easily infer [the] stated desire to touch someone's penis or breasts, regardless of the gender of the speaker, were motivated by the employee's gender" (citation and internal quotation marks omitted)).

Defendant nonetheless argues that Plaintiff's claim should fail because Kirkley-Bey's sexual conduct was not driven by a desire to engage in sexual activity with Plaintiff, but because

she had hoped to convince Plaintiff to drop his complaint.[7]  According to Defendant, Plaintiff "admitted in his deposition testimony that Kelly Kirkley-Bey engaged in the objectionable conduct . . . *solely* because she was trying to get the Plaintiff to drop a complaint he was pursuing against her." *Id.* (emphasis added).  Defendant cites to Kirkley-Bey's statements during the February 2017 incident (which Plaintiff recalled in his deposition testimony), such as "what can I do to fix this?" and "we shouldn't be arguing" as evidence that Plaintiff "understood the conduct to be in response to his complaint against Ms. Kirkley-Bey, not his gender." *Id.* at 6–7.

Even if Kirkley-Bey engaged in the objectionable conduct solely to convince Plaintiff to drop his complaint, however, Defendant misunderstands the law governing Title VII claims.  The Supreme Court has long held that, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 523 U.S. at 80; *Kaytor*, 609 F.3d at 547–48 ("The harassing conduct need not be motivated by sexual desire, however, *so long as it was motivated by gender*." (emphasis added)).  The Second Circuit has elaborated on this principle and has explained what a Title VII plaintiff must demonstrate:

> [T]he plaintiff [in a Title VII hostile environment claim] is required to establish that the harassment complained of was based on [his or] her gender. . . . In order to show that the allegedly harassing conduct was motivated by gender . . . [a] plaintiff must show that one of the reasons for the harassment or the decision was that she 'was a woman' [or a man].

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (citations and internal quotation marks omitted).

---

[7] Plaintiff disputes this characterization of Kirkley-Bey's conduct.  Plaintiff argues that he testified in his deposition that he perceived Kirkley-Bey's conduct to be sexual.  Pl.'s Mem. at 8.  Plaintiff argues in the alternative that, "even where the record may reveal potential other motivating factors a jury could still reasonably conclude that Ms. Kirkley-Bey touched the Plaintiff because of his gender."  Pl.'s Mem. at 8.  For the reasons stated herein, the Court agrees.

In the case at bar, there is evidence in the record that Kirkley-Bey's harassing conduct was motivated by Plaintiff's gender, even if it was not motivated by sexual desire. *See Kaytor*, 609 F.3d at 547–48. Indeed, when Plaintiff was asked during his deposition if he thought "that Ms. Kirkley-Bey would have tried to kiss a female employee like you allege that she tried to kiss you on February 3, 2017," Plaintiff said, "I don't think so. . . . [b]ecause she's a female." Doc 58-1, at 49. Additionally, Plaintiff also answered in the affirmative to the question that, "you don't believe she would touch another female employee in that way; is that correct[?]" *Id.* at 50. Drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could find that Kirkley-Bey's conduct occurred because of Plaintiff's sex. For this reason, summary judgment on the hostile work environment claim is inappropriate, and is denied. *See also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) ("[H]ostile work environment claims present mixed question[s] of law and fact that are especially well-suited for jury determination." (citation and internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons discussed herein, the Court makes the following Ruling and Order:

1. Defendant's motion for summary judgment is DENIED. Doc. 56.

2. The Parties are instructed to meet and confer for the purpose of proposing deadlines for all applicable remaining scheduling issues—*e.g.*, the date by which the joint trial memorandum will be filed and the case will be ready for trial. *See* Form 26(f) Report of Parties' Planning Meeting, C. Conn. L. Civ. R. Civil Appendix. The Parties are instructed to then submit to the Court a Form 26(f) Report (outlining the remaining deadlines) in accordance with the Local Rules by **March 13, 2020**.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 19, 2020

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge